UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BASIL E. GORDON,

        **Plaintiff,**

v.                                                                                  Case No. 6:23-cv-779

CAPITAL ONE SERVICES, LLC,

        **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **BASIL E. GORDON**, by Counsel, and for his Complaint against **CAPITAL ONE SERVICES, LLC**, he alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual and punitive damages under Florida common law.

2. Sometime in 2021, Defendant came to the incorrect conclusion that Plaintiff was deceased.

3. Plaintiff is not deceased, yet Defendant reported to credit bureaus, including Equifax, that he was.

4. Reporting a consumer as deceased creates significant, almost-insurmountable problems. The consumer's credit is essentially paralyzed, as anyone to whom the person applies for credit sees the "deceased" notation and assumes the applicant is attempting to commit fraud by using the identifying information of a person who is deceased to obtain credit.

5. This occurred with Plaintiff, as Defendant communicated to at least Equifax that Plaintiff was deceased when he was not. Plaintiff applied for credit and was denied because of Defendant's inaccurate attribution of a deceased notation to his name.

6. Plaintiff brings common-law claims against Capital One, for stating to others that Plaintiff was deceased when he was not, causing him financial harm.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of Florida, and Defendant has its principal place of business in Virginia. There is more than $75,000 at stake in this action.

8. Venue is proper in this District because the violations occurred in this District, and the Defendant transacted business within this District.

## PARTIES

9. Plaintiff Basil E. Gordon is a natural person who resides in Oakland, Florida.

10. Capital One is a credit-card provider that maintains its corporate headquarters in McLean, Virginia.

11. Capital One regularly conducts business in this District and Division.

## FACTUAL ALLEGATIONS

12. In June 2021, Plaintiff received four letters from Capital One Bank USA, N.A. regarding four separate accounts addressed to the *Estate of Basil E. Gordon.* Capital One offered its condolences and advised that these accounts were restricted from further use because Basil E. Gordon was deceased.

13. Plaintiff obtained a copy of his Equifax Consumer Disclosure in September 2021 and learned that Capital One was reporting the status on all four of his accounts that "Consumer is Deceased."

14. Also in the fall of 2021, Plaintiff applied for a loan to purchase a dump truck and was subsequently denied because he had been reported as deceased.

15. Plaintiff is certainly not deceased.

16. Capital One knew that Plaintiff was and is alive because of other information in its files, including recent payment histories showing that he continues to timely pay his bills.

17. Only the living typically pay bills.

18. Despite this discrepancy in information Defendant possessed, Defendant continued to maintain the notation on Plaintiff's credit file that he was deceased.

19. Beyond its internal records, Capital One could have consulted the Social Security Administration's Death Master Index and learned that Plaintiff's Social Security Number is not contained in that list.

20. Capital One took none of these steps before inaccurately reporting to the world that Plaintiff was deceased.

21. Creditors and credit bureaus do not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

22. Credit bureaus and creditors likewise do not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

23. Credit bureaus and creditors employ no procedures at all which assure that a consumer with a "deceased" mark on his or her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

24. Even in instances where other data on the fact of the consumer's report indicates that he/she is not deceased, Credit bureaus and creditors employ no procedures which assure that a consumer with a "deceased" notation on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

25. Once a "deceased" mark is placed on a consumer's report, credit bureaus will not calculate and will not provide a credit score for that consumer.

26. Defendant knows that living consumers are turned down for credit specifically because it is reporting those consumers as "deceased."

27. Defendant further knows that reporting a consumer as deceased is the most harmful notation that can be attached to one's credit. There is no more derogatory notation-not bankruptcy, foreclosure, or repossession-than reporting a consumer as deceased.

28. Defendant is therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in the credit market. Virtually all creditors view the deceased moniker as an indicator of fraud and, after seeing it attached to the file of someone who applies for credit, will refuse to grant credit to that customer.

29. Defendant has been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because it is reporting living consumers as "deceased" and without a credit score.

## CLAIMS FOR RELIEF

### COUNT I:
### DEFAMATION *PER SE*

30. Plaintiff realleges and incorporates Paragraphs 12–29 as if fully set forth herein.

31. Defendant published a false statement about Plaintiff: that Plaintiff was deceased when she was in fact very much alive.

32. Defendant published this false statement to third parties, including various credit reporting agencies, repeatedly.

33. Defendant's publication of these false statements caused Plaintiff injury as he was unable to enter into transactions relating to his business. He was denied credit because Defendant reported him as deceased when he was not.

34. This inability to obtain credit impacted Plaintiff's ability to engage in his chosen profession, and therefore constituted defamation *per se.*

35. The inaccurate reporting by Defendant also caused Plaintiff actual damages, as he became distressed in his inability to obtain credit to purchase equipment needed for his occupation.

36. Plaintiff also suffered lost time as he was forced to investigate why companies believed he was deceased and ensure his creditors knew that he was very much alive.

37. Discovery will show that Defendant's false statements about Plaintiff were made in writing and thus constituted libel.

38. In the alternative, such statements were made orally, and thus constituted slander.

39. Defendant's defamatory statements were libel *per se* as saying someone is dead obviously will cause extreme damage to a person's reputation. As just one example, creditors will not lend money to a person who is believed to be deceased.

40. Such a statement also subjected Plaintiff to hatred, distrust, ridicule, contempt, or disgrace as to his potential creditors. This result is likewise defamation per se under Florida law.

41. The statements about Plaintiff were false, and his creditors were capable of understanding the meaning of the statements.

42. At the time Defendant made the statements, it knew the statements were false or was at least negligent in attributing to Plaintiff the moniker of deceased.

43. The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential landlord.

44. As a result of Defendant's stating to Plaintiff's potential creditors that Plaintiff was deceased, Plaintiff was unable to obtain credit for which he applied.

45. Defendant's statements injured Plaintiff's reputation in the community, as well as causing him to suffer economic damages such as the loss of credit, inability to earn a living, and other attendant damages.

46. Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

47. Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

## COUNT II:
## DEFAMATION
### Alternative Claim

48. Plaintiff realleges and incorporates Paragraphs 12–29 as if fully set forth herein.

49. Defendant published to Plaintiff's prospective creditors a statement about Plaintiff that stated Plaintiff was deceased when he was not.

50. The statements about Plaintiff were false, and his creditors were capable of understanding the meaning of the statements.

51. The statements that Plaintiff was deceased were statements of fact.

52. At the time Defendant made the statements, it knew the statements were false, or recklessly failed to verify them. Alternatively, Defendant was at least negligent in attributing to Plaintiff the deceased moniker.

53. The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential creditors.

54. As a result of Defendant's stating to Plaintiff's potential creditors that Plaintiff was deceased, Plaintiff was unable to obtain credit for which he applied.

55. Defendant's statements injured Plaintiff's reputation in the community, as well as causing him to suffer economic damages such as the loss of credit, increased costs of credit, and out-of-pocket costs.

56. Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

57. Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

## JURY DEMAND

58. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorneys' fees and costs as permitted by law; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

April 28, 2023.

Respectfully Submitted,

**BASIL E. GORDON,**

    */s/ Craig C. Marchiando*
Craig Carley Marchiando, Fla. Bar #1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
757-930-3660 – Telephone
757-930-3662 - Fax
Email: craig@clalegal.com

*Counsel for Plaintiff*